UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS BROWN, Petitioner : 
vs. : CIVIL NO. 1:CV-04-1519
PA BOARD OF PROBATION & PAROLE, ET AL., : (Judge Caldwell)
Respondents. :

M E M O R A N D U M

I. *Introduction*.

Petitioner, Lewis Brown, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Pennsylvania Board of Probation and Parole ("the Board") to deny him parole. He makes the following claims. First, because any state court remedy he could pursue would be futile, exhaustion should be excused. Second, the Board's decision violates the Ex Post Facto Clause of the federal Constitution because it applied statutory changes to the parole law made in 1996 to offenses he committed in 1980 and 1987, resulting in an increase in his incarceration.

For the reasons that follow, the petition will be denied as we find that no ex post facto violation in the denial of Petitioner's parole.

II. *Background*.

Brown is currently serving an aggregated eight-to-twenty-five-year sentence pursuant to a 1980 conviction for burglary, and a 1987 conviction for escape. (Doc. 10, Ex. A, Martinez Decl., ¶21). His original minimum sentence date was September 26, 1988, and his maximum sentence was set to expire on September 26, 2005. (*Id.*)

Petitioner was first granted parole on November 1, 1988. (*Id.* at ¶22). His parole was revoked on April 27, 1990, for violating four parole conditions. (*Id.* at ¶23). On January 30, 1991, Brown was granted parole for a second time. (*Id.* at ¶24). On May 22, 1991, he was arrested and charged with burglary. (*Id.* at ¶25). His parole was revoked on April 7, 1991, for violating two parole conditions and he was ordered detained pending while his new charges were pending. (*Id.* at ¶26).

Petitioner was sentenced to serve a two-to-four-year sentence for the new burglary conviction and it is being served consecutive to his twenty-five-year sentence. (*Id.* at ¶27). On March 16, 1992, Brown was recommitted as a convicted parole violator because of the burglary conviction and his new maximum sentence was recalculated to March 26, 2007. (*Id.* at ¶28). He was constructively paroled on September 8, 1993, to begin serving the new burglary sentence. (*Id.* at ¶29).

On April 15, 1996, Brown was paroled again. (*Id.* at ¶30). The parole was revoked on July 21 1998 for violating three conditions of parole. (*Id.* at ¶ 31). The maximum term of his twenty-five-year sentence was recalculated to February 24, 2008.

Brown was paroled for a final time on May 23, 2000. (*Id.* at ¶33). On April 22, 2001, he was arrested and charged with possession of a controlled substance and possession of drug paraphernalia. (*Id.* at ¶34). On May 16, 2001, Petitioner was recommitted for violating two conditions of parole. (Id. at ¶ 35). He was given a six-to-twelve month county sentence for the drug offenses on January 2, 2002 and was immediately constructively paroled from that sentence. (*Id.* at ¶36). On July 11, 2002, Brown was recommitted as a convicted parole violator and the maximum term for his twenty-five-year sentence was recalculated to November 23, 2012. (*Id.* at ¶37).

Brown's petition focuses on his June 22, 2004, denial. In its June 22, 2004, decision, the Board denied parole and determined that Petitioner's parole eligibility would be reviewed in or after May, 2005. (Doc. 10, Ex. G, Notice of Board decision dated June 22, 2004). The notice explaining the Board's decision states that:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the

> Parole Act of 1941, as amended, 61 P.S. § 331.1 *et seq.*, the Board of probation and parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injuried if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision include the following:
>
> Your prior history of supervision failures; Your unacceptable compliance with prescribed institutional programs; Your need to participate in and complete additional institutional programs.
>
> You will be reviewed in or after May, 2005.

(*Id.*).

On July 14, 2004, Brown filed his present habeas petition. He did not seek to exhaust his state court remedies because he believes them to be "futile" in light of the Pennsylvania Supreme Court's decisions in *Winklespecht v. Pennsylvania Bd. of Prob. & Parole*, 571 Pa. 685, 813 A.2d 688 (2002), and *Finnegan v. Pennsylvania Bd. of Prob. & Parole*, 576 Pa. 59, 838 A.2d 684 (2003), rejecting federal ex post facto challenges based on the 1996 change in the parole statute. Respondents filed their response on July 20, 2004.

III. *Discussion.*

A. *Exhaustion of State-Court Remedies.*[1]

Brown's challenge to his parole denial was properly brought under 28 U.S.C. § 2254, *Coady v. Vaughn*, 251 F.3d 480, 484-85 (3d Cir. 2001), which has an exhaustion requirement, requiring a petitioner to exhaust his state-court remedies before filing a 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A). Here, Respondent urges the dismissal of Brown's petition based on his admitted failure to pursue available state-court remedies. Respondent contends that a futility argument based on recent Pennsylvania Supreme Court precedent adverse to the ex post facto claim is not sufficient to excuse exhaustion.

We reject Respondent's argument because we will deny the petition, so exhaustion is not relevant here. *See* 28 U.S.C. §

[1] We are aware of the Pennsylvania Supreme Court's recent decision in *Cimaszewski v. Pennsylvania Bd. of Prob. & Parole*, __ Pa. ___, 868 A.2d 416, 427 (2005), which expressly overrules *Finnegan* to the extent that it fails to recognize that the "1996 amendment may be shown to violate the *ex post facto* clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a significant risk of prolonging his incarceration." That the Pennsylvania Supreme Court now recognizes the possibility of an ex post facto violation in these circumstances certainly supports the Respondent's contention that exhaustion should not be excused. However, Brown filed his petition seven months prior to the *Cimaszewski* decision, and it is unreasonable to expect that he could have predicted the Pennsylvania Supreme Court's decision. Therefore, we will not rely on the *Cimaszewski* decision in deciding whether or not exhaustion is required.

2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

B. *The Ex Post Facto Claim.*[2]

In pertinent part, the Ex Post Facto Clause, U.S. Const. Art. I, § 10, cl. 1, bars a change in law that retroactively increases the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 249-50, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236, 244 (2000). The clause covers a change in state regulatory rules, even if the rules deal with an agency's substantive discretion in making the decision to parole. *Id.* at 250, 253, 255, 120 S.Ct. at 1367, 1369-70, 146 L.Ed.2d at 244-47. The ex post facto issue in this context is one of "particular difficulty," given the paroling agency's discretion. *Id*. at 250, 120 S.Ct. at 1367, 146 L.Ed.2d at 244. Nonetheless, if the change in the law, either on its face, or in its "practical implementation," "creates a significant risk of increasing [the inmate's] punishment" in comparison to the previous rule, *id.* at 255, 120 S.Ct. at 1370, 146 L.Ed.2d at 247, the Ex Post Facto

---

[2] Again, we note that *Cimaszewski* was decided seven months after Brown filed his petition. Therefore, we will not rely on it in rendering our decision.

Clause forbids its enforcement against the inmate. *Id.*, 120 S.Ct. at 1370, 146 L.Ed.2d at 247.

In 1996, the Pennsylvania legislature amended the section of its parole law, stating the public policy of the commonwealth toward parole. In pertinent part, the amendment changed the statutory section as follows: "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[3] Before then, section 331.1 made no mention of pubic safety and in fact declared the public policy of the state to be that parole would be a period of rehabilitation of

---

[3] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public*. In addition to this goal, the board shall address input by crime victims and *assist in the fair administra- tion of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

an inmate and his restoration to society, aided and facilitated by the parole administration.[4]

Applying the ex post facto principles set forth above, the Third Circuit ruled in *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003), that the Board had violated petitioner Mickens-Thomas's ex post facto rights by refusing him parole after his life sentence for murder had been commuted by the governor. The court found that the 1996 change to section 331.1 had prompted the Board to adopt policies that made public safety the predominant concern in making parole decisions. Before this change public safety had been just one factor, among others, to be considered. *Id.* at 385.[5] Further, the change had increased Mickens-Thomas's

---

[4] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

[5] As further support for this conclusion, the court noted that Mickens-Thomas was the first inmate of 266 to have been denied (continued...)

punishment, as shown in part by the fact that parole guidelines and other criteria in effect before the 1996 amendment indicated that parole should have been granted. *Id.* at 387-88. The court of appeals ordered that the Board review Mickens-Thomas under pre-1996 parole rules. In two later, nonprecedential opinions, *McLaurin v. Larkins*, 76 Fed. Appx. 415 (3d Cir. 2003), and *Hollawell v. Gillis*, 65 Fed. Appx. 809 (3d Cir. 2003), the Third Circuit extended *Mickens-Thomas* to inmates convicted of other crimes.

Brown argues that the Board likewise violated his ex post facto rights by using its post-1996 parole criteria to deny him parole, and he requests that we order the Board to review his qualification for parole under the pre-1996 law.

In opposition, the Board contends that Petitioner has no *Mickens-Thomas* ex post facto claim because his June 22, 2004, parole review occurred after the Pennsylvania Supreme Court had decided *Winklespecht, supra.* In *Winklespecht*, a majority of the court agreed that the 1996 changes to section 331.1 had not substantively altered the criteria for parole since "'protect[ing] the safety of the public'" and "'assist[ing] in the fair administration of justice'" had always been considerations in the

[5](...continued) parole after a life sentence had been commuted. *Id.*

parole process. 571 Pa. at 691, 813 A.2d at 692. The additional language had merely "clarified the policy." *Id.*, 813 A.2d at 692.

The significance of *Winklespecht*'s timing is that thereafter the Board would supposedly know that the 1996 statutory change had not substantively altered Pennsylvania parole law. Hence any parole decision made after *Winklespecht* would not have been made with this erroneous understanding of the parole law. This point was rejected in *Mickens-Thomas* because *Winklespecht* had been decided after Mickens-Thomas's parole review and thus too late to affect the Board's decision. 321 F.3d at 391. However, it has been considered dispositive in other cases where the Board decision came after *Winklespecht*, and when the Board had also relied on pre-1996 parole criteria. *See Tucker v. Patrick*, No. 3:CV-04-1232, slip op. at 10 (M.D. Pa. Dec. 7, 2004)(Vanaskie, C.J.); *Grob v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); *Sphar v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J); *Schaeffer v. Pa. Bd. of Prob. & Parole*, No. 3:CV-04-1159, slip op. at 8 (M.D. Pa. Oct. 26, 2004)(Munley, J.). *See also Johnson v. Lavan*, 2004 WL 1622051 (E.D.)(adopting magistrate judge's report at 2004 WL 1291973, page cite at *4-5). *Accord Fripp v. Meyers*, 2004 WL 2915299 at *7-9 (E.D. Pa.)(rejecting ex post facto claim on a pre-*Winklespecht* Board

decision when the Board had used pre-1996 criteria to deny parole). *But see Adams v. Kelchner*, 2004 WL 2634357 at *8-10 (M.D. Pa.)(Conaboy, J.)(in the absence of affirmative evidence indicating that the post-*Winklespecht* Board decision had been made using pre-1996 criteria and under no influence of the erroneous understanding of the 1996 statutory changes, court remanded for new hearing under the old parole criteria, citing *Hollawell, supra*, and *Hart, supra*); *Pisa v. Pa. Bd. of Prob. & Parole*, No. 4:CV-04-1079, slip op. at 11-12 (M.D. Pa. Nov. 18, 2004)(McClure, J.)(following *Adams*). We agree with the majority view and find no ex post facto violation here.[6] The June 22, 2004, decision came approximately eighteen months after *Winklespecht* was decided. It does not mention a risk to public safety as a reason for denying parole, but public safety has always been a consideration. *Mickens-Thomas, supra*, 321 F.3d at 385. The other specific reasons are ones that were appropriately considered before 1996 and merit denial of parole under any pre-1996 standard. For "prior history of supervision failures," *see Reynolds v. Pa. Bd. of Prob. & Parole*, 809 A.2d 426, 433 n.9 (Pa. Commw. 2002); for "compliance with prescribed institutional programs" and "need to

---

[6] We find *Hollawell* and *Hart* distinguishable because they dealt with pre-*Winklespecht* Board decisions, unlike the courts in *Adams* and *Pisa,* which decided that *Winklespecht*'s timing was irrelevant.

participate in and complete additional institutional programs," *see Mickens-Thomas*, 321 F.3d at 378 (stating that "institutional adjustment(behavior and program adjustment)" were to be considered pre-1996). We therefore conclude there is no ex post facto violation.

Brown believes that the Board admitted in its parole decision that it retroactively applied the 1996 amendment to him by using the phrase "pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq." However, we cannot find the Board's use of the phrase means that they retroactively applied amendments to the Petitioner. Finally, although Petitioner asserts that he has been "arbitrarily denied parole for the same reasons" as were given in his May 5, 2003, parole denial, and, therefore, the language used by the Board is "vague, untrue and boilerplate," he has provided nothing to show that he acted in compliance with the institutional programs prescribed for him after his May 5, 2003, parole denial.[7]

[7] We further note that Petitioner's May 5, 2003, (Doc. 10, Ex. F) denial contained additional factors that were not present in his June 22, 2004, denial.

IV. *Conclusion.*

We will deny the petition. We will also deny a certificate of appealability, based on the above analysis. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

We will enter an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 19, 2005

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEWIS BROWN, Petitioner | : | |
| vs. | : | CIVIL NO. 1:CV-04-1519 |
| | : | (Judge Caldwell) |
| PA BOARD OF PROBATION & PAROLE, ET AL., Respondents. | : | |

O R D E R

AND NOW, this 19th day of April, 2005, it is ordered that:

1. The petition (doc. 1) for a writ of habeas corpus is denied.

2. A certificate of appealability is denied,

3. The Clerk of Court shall close this file.

/s/William W. Caldwell
William W. Caldwell
United States District Judge